UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| GENEVA R. VELASQUEZ, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 1:13-CV-064-BL |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | § § § § § | |
| Defendant. | § § | Assigned to U.S. Magistrate Judge |

## MEMORANDUM OPINION AND ORDER OF REMAND

Pursuant to 42 U.S.C. § 405(g) and 1383(c), Plaintiff Geneva Velasquez (Velasquez) seeks judicial review of an administrative decision of the Commissioner of Social Security denying Plaintiff's application for a period of disability, disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act. All parties consented to the jurisdiction of the U.S. Magistrate Judge and the United States District Judge ordered the case be reassigned to this court.

This court has considered the pleadings, the briefs, and the administrative record and finds that the Commissioner's decision should be vacated in part and this matter remanded to the Commissioner for further proceedings.

### STATEMENT OF THE CASE

Velasquez originally filed for disability benefits on November 28, 2006. (Tr. 21). After a hearing, an Administrative Law Judge (ALJ) found Velasquez not disabled on August 13, 2008. (Tr. 132-42). On September 26, 2008, the Appeals Council vacated the August 13 decision and

remanded the case for a new hearing and decision. (Tr. 143-46). On September 23, 2009, after another hearing, the same ALJ again found Velasquez not disabled. (Tr. 147-58). Once more, the Appeals Council vacated the ALJ's decision and remanded the case. (Tr. 159-62). In a decision dated August 8, 2012, a different ALJ found Velasquez not disabled for a third time. (Tr. 21-29). The Appeals Council denied review on February 19, 2013. (Tr. 1-6). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## FACTUAL BACKGROUND

Velasquez last worked as an account retention executive (also known as a telephone operator) for a telephone company in October of 2006. (Tr. 39, 49). She alleges a combination of physical and mental ailments including, but not limited to: back pain, neck pain, knee pain, strokes, hypertension, anxiety, panic disorder, depression, transient ischemic attacks, hernias, pancreatitis, fallen bladder, chest pains, insomnia, migraines, phlebitis, and cysts between the legs. (Tr. 40-47).

Many of Velasquez's problems associated with back pain have their origin in August of 2004, when she pulled back on a toner cartridge from a printer and fell over backward to her right. (*See* Tr. 24, 671). The common narrative throughout the record of Velasquez's experience with that injury and associated treatment is the following: Velasquez complains of severe pain but examining and assessing doctors opine that the objective medical evidence does not correlate with her subjective complaints. (Tr. 24, 668-90, 777-81, 801-808). That injury is not the focus of this appeal.

Velasquez also has numerous abdomen-related ailments, including hernias, pancreatitis, and bladder complications. (See Tr. 41-46). Treatment of these ailments achieved varying degrees of success; indeed, Velasquez was undergoing procedures throughout the administrative process of her case. (Tr. 25). Velasquez's abdomen-related ailments are not the focus of this appeal either.

Finally, and most relevantly, Velasquez complained of mental and psychological problems, including anxiety, which sometimes manifested as panic attacks. (Tr. 43). From January of 2005 to May of 2007, Velasquez was seen by James Wray, D.O. (Tr. 691-776). Dr. Wray treated Velasquez for anxiety and panic disorder, among other things, prescribing Velasquez several anxiety medications. (Tr. 691-723). Dr. Wray's psychiatric diagnosis was anxiety. (Tr. 692). Further psychiatric examinations and assessments were performed by psychologists Charles Rudolph, Ph.D., Charles Lankford, Ph.D., and Robert Brown, Psy.D. As is relevant to the appeal before the court, in May of 2007, Dr. Rudolph diagnosed Velasquez with panic disorder, but expressed no indication as to functional limitation. (Tr. 784-86). In June of 2007, Dr. Lankford diagnosed Velasquez with panic disorder, and further opined that Velasquez was moderately limited in her ability to interact with supervisors and coworkers. (Tr. 810). In June of 2012, Dr. Brown diagnosed Velasquez with panic disorder and opined that she was markedly limited in her ability to interact with supervisors and coworkers. (Tr. 1030, 1037). Velasquez's anxiety and panic disorder are the focus for the court on appeal.

## STANDARD OF REVIEW

A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2011).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2011). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The social security regulations state that an individual's RFC represents "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545, 416.945.

Judicial review of a decision by the Commissioner is limited to two inquiries: a court must determine "whether the Commissioner applied the proper legal standards and whether substantial evidence in the record supports the decision to deny benefits." *Audler*, 501 F.3d at 447; 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). "Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir.

2002). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

## DISCUSSION

Velasquez raises two issues. First, she claims the ALJ's RFC is not supported by substantial evidence because the ALJ ignored the opinion of an examining physician. Second, Velasquez claims the ALJ's finding as to the severity of Velasquez's impairments is not supported by substantial evidence because the ALJ did not adequately explain the opinions of several medical professionals.

### I.   Dr. Brown's Opinion and the RFC Assessment

Velasquez claims the ALJ's RFC determination is not supported by substantial evidence because the ALJ ignored a particular examining physician, Dr. Brown. (Pl.'s Br. 13). In a consultative examination, Dr. Brown concluded that Velasquez had "marked" restrictions in her ability to interact appropriately with supervisors and coworkers. (Tr. 1031). Velasquez claims that though the ALJ briefly mentioned Dr. Brown's opinion, the ALJ's rejection thereof was error. (Pl.'s Br. 13-14).

As noted, the task for this court is to determine whether substantial evidence supports the ALJ's decision and whether the ALJ applied the proper legal standards. *See Audler*, 501 F.3d at 447; 42 U.S.C. § 405(g). For the reasons discussed below, this court finds that substantial evidence supports the ALJ's determination, but that the ALJ did not apply the proper legal standards.

#### A. Substantial Evidence

Dr. Lankford opined that Velasquez was moderately limited in her ability to interact with supervisors and coworkers. This opinion, if credited, constitutes substantial evidence to support

the ALJ's determination. *See Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). The ALJ considered Dr. Lankford's opinion at length, contrasting it with Velasquez's subjective complaints and the opinions by many other treating and examining physicians on record who repeatedly note Velasquez's penchant for malingering and symptom magnification. (Tr. 22-27). Thus, substantial evidence supports the ALJ's RFC determination.

**B. Proper Legal Standard**

1. Dr. Brown's Opinion

In determining RFC, the ALJ considers the individual's ability to meet the physical and mental demands, as well as the sensory and other requirements of the job. 20 C.F.R. §§ 404.1545(a), 416.945(a). "The RFC assessment must be based on *all* of the relevant evidence in the case record." SSR 96-8P, 1996 WL 374184 (July 2, 1996) (emphasis in original); *see* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) ("it is clear that the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position") (citations omitted). The ALJ considers exertional and non-exertional limitations. *See Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001); 20 C.F.R. § 404.1569(a). Mental limitations, such as a limited ability to interact with supervisors and coworkers, may affect a person's ability to carry out certain activities. 20 C.F.R. §§ 404.1545(c), 416.945(c). In assigning relative weight to medical opinions, generally the ALJ will give greater weight to examining sources over non-examining sources. 20 C.F.R. § 404.1527(c)(1); *Myers*, 238 F. 3d 617; *see Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir. 1991) ("[A]n ALJ may properly rely on a non-examining physician's assessment when . . . those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician.").

The issue here concerns a check box on the mental RFC form. One doctor checked the box indicating that Velasquez had "moderate" limitations in her ability to interact appropriately with supervisors and coworkers. (Tr. 810). Another doctor checked the box indicating that Velasquez had "marked" limitations. (Tr. 1031).

The timeline, again, unfolded as follows: In May of 2007, Dr. Rudolph performed a consultative psychological exam on Velasquez, diagnosing her with panic disorder, but expressing no indication as to functional limitation. (Tr. 784-86). In June of 2007, Dr. Lankford, based on Dr. Rudolph's exam, completed a mental RFC assessment also diagnosing Velasquez with panic disorder, but further opining that Velasquez was moderately limited in her ability to interact with supervisors and coworkers. (Tr. 810). In September of 2009, the prior ALJ issued an opinion giving Dr. Lankford's opinion great weight concerning Velasquez's functional limitations. (Tr. 155). In June of 2012, Dr. Brown conducted a consultative exam, diagnosing Velasquez with panic disorder and opining that she was markedly limited in her ability to interact with supervisors and coworkers. (Tr. 1030, 1037). Finally in August of 2012, the current ALJ issued his opinion finding that Velasquez was moderately limited, crediting Dr. Lankford and not Dr. Brown. (Tr. 21-29).

Dr. Brown was an examining physician; Dr. Lankford simply reviewed the record to reach his opinions. *See* 20 C.F.R. §§ 404.1527, 404.1502. The medical opinions as to the severity of Velasquez's limitations in ability to interact appropriately with supervisors and coworkers clearly conflicted. (Tr. 810, 1031). The ALJ undertook a lengthy step three discussion, including a symptom-by-symptom analysis as to Velasquez's physical functional capacity, with explanations why he did not find Velasquez credible concerning her physical

complaints. (Tr. 22-27). The ALJ's credibility determination is supported by substantial evidence on the record and Velasquez does not contest that on appeal to this court.

As to mental RFC analysis, however, while the ALJ did in fact "lower" his RFC to sedentary work (where the prior ALJ's second opinion rated it at light), the ALJ did not address the implications a markedly limited ability to interact appropriately with supervisors and coworkers might have on Velasquez's functional capacity. The record as it existed at the writing of the first and second ALJ's opinions contained just one medical source opinion of Velasquez's mental functional limitation, that of Dr. Lankford. However at the writing of the current ALJ's opinion, the record contained a contradictory functional limitation opinion, that of Dr. Brown. The ALJ did not include an explanation of his treatment of this contradictory medical opinion. Nor did the ALJ note why Dr. Brown, an examining source, was accorded less (if any) weight than Dr. Lankford, a non-examining source. *See* 20 C.F.R. §§ 404.1502, 416.902, 404.1527(c)(1), 416.927(c)(1). When he did so without explanation, the ALJ erred.

2. Harmless Error

Error alone is not cause for remand or reversal. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in the administrative process is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected."). The error must have prejudiced the claimant. *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). "To establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.'" *Id.* "The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time." *Mays*, 837 F.2d at 1364.

Velasquez argues that a marked limitation in ability to interact with coworkers and supervisors would have led the vocational expert (VE) to conclude that Velasquez could not return to her prior work as a telephone operator. (Pl.'s Br. 16). However, the administrative record does not support this argument. The VE testified that interaction with coworkers was "not a significant part of the job [of telephone operator]." (Tr. 52-53). At neither the administrative hearing nor in briefing does Velasquez adduce evidence to support her argument that a marked limitation would preclude her from her prior work. Velasquez does not show that an ALJ finding of "marked" would have altered the result of her case. *See Brock*, 84 F.3d at 728. Therefore, Velasquez does not show that her substantial rights have been affected. *See id.*; *Mays*, 837 F.2d at 1364. As such, remand on this issue is not required.

## II. Diagnoses of Panic Disorder and Anxiety, and Dr. Wray

Velasquez claims the ALJ erred when he did not adequately explain why he rejected the opinions of four medical professionals as to Velasquez's alleged anxiety and panic disorder. (Pl.'s Br. 17). To begin, some clarification is necessary, followed by a restated point of error for the court.

### A. Clarification

Velasquez's point of error reads:

The ALJ's finding #3 as to the Plaintiff's "severe" impairments is not supported by substantial evidence because the ALJ did not adequately explain why Dr. T. James Wray's, Dr. R. Scott Brown, Dr. Charles Rudolph, and Dr. [sic] Lankford's diagnoses of anxiety and panic disorder were not included as a "severe" impairment. (Pl.'s Br. 17).

#### 1. No Universal Anxiety and Panic Disorder Diagnosis

It is inaccurate to suggest that each of these four medical professionals diagnosed Velasquez with both panic disorder and anxiety. For one, the court notes that panic disorder is

itself an anxiety disorder.[1] However, Velasquez articulates panic disorder and anxiety as separate issues, thus examination of Velasquez's diagnosis history on the record for each ailment is warranted.

Dr. Wray diagnosed Velasquez with anxiety but not panic disorder. (Tr. 691-776). Dr. Brown diagnosed Velasquez with panic disorder but merely mentioned in summary that Velasquez "struggles with depression and anxiety." (Tr. 1037). It is not clear that Dr. Brown diagnosed Velasquez with anxiety *per se*. Dr. Rudolph diagnosed Velasquez with panic disorder but not anxiety. (Tr. 786). Dr. Lankford also diagnosed Velasquez with panic disorder but not with anxiety. (Tr. 792).

2. Severity

Contrary to Velasquez's repeated assertions in briefing, none of Drs. Wray, Brown, Rudolph, or Lankford ever opined that either Velasquez's alleged anxiety or panic disorder was severe. Without question Velasquez received diagnoses of anxiety and/or panic disorder, and Velasquez received medication for such. (*See, e.g.*, Tr. 692 (anxiety diagnosis via Dr. Wray), 693 (Xanax prescription via Dr. Wray), 792 (panic disorder diagnosis via Dr. Lankford)). But the conclusion that such anxiety or panic disorder was severe was not made by the examining doctors, as Velasquez alleges. (Pl.'s Br. 17-21). Second, Velasquez's contention that the number of medications she was taking "indicates that [her] anxiety was severe" is not well supported. (Pl.'s Br. 18). At various times, Velasquez was prescribed Alprazolam, Zoloft, Buspar, Diazepam, Celexa, and Klonopin. (Pl.'s Br. 18; Tr. 693, 694, 695, 701, 720). But unlike Velasquez claims, this number of medications was not required because her condition was severe. (Pl.'s Br. 18). Instead, the variety had to do in part with allergies, side effects, and

---

[1] DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 433 (Am. Psychiatric Ass'n 4th ed. 2000).

Velasquez's preferences. (Tr. 694 (Dr. Wray stating Velasquez "wants Rx to replace Alprazolam," so he switched her to Buspar), 695 (Dr. Wray stating Velasquez was allergic to Zoloft), 720 (Dr. Wray stating "Celexa caused mood swings"). In short, the conclusion that any anxiety or panic disorder Velasquez suffered was severe was not made by any medical professionals on the record.

### 3. Some Probative Weight to GAF

Velasquez alleges the ALJ erred by failing to explain why he gave Dr. Rudolph's opinion some probative weight and Dr. Lankford's opinion great weight. (Pl.'s Br. 18-19). In fact, the ALJ notes that the portion of Dr. Rudolph's opinion to which he was giving only some weight was the GAF score. (Tr. 26). Indeed, the prior ALJ stated in his first opinion that because Dr. Rudolph's GAF was so out of sync with the rest of Dr. Rudolph's own observations of Velasquez, the ALJ could either accept the GAF and reject the rest of Dr. Rudolph's observations, or reject the GAF and accept the rest of Dr. Rudolph's observations. (Tr. 139). He chose the latter. (Tr. 139). The ALJ incorporates into his opinion language of the former ALJ's opinion. (Tr. 26, 139).

### 4. Symptoms vs. Diagnoses

Finally, Velasquez occasionally misconstrues symptoms with diagnoses. *(See, e.g.,* Pl.'s Br. 18-19). Many of the alleged diagnoses that Velasquez claims the ALJ improperly rejected are in fact her own subjective complaints that the physicians simply noted on examination charts. *(See, e.g.,* Pl.'s Br. 18-19; Tr. 692, 697, 723).

### B. Restated Point of Error

With those clarifications made, the question remains: Did the ALJ appropriately address the diagnoses of panic disorder and the treatment records and anxiety diagnosis of Dr. Wray? (*See* Tr. 786, 792, 1037).

<u>1. Panic Disorder Diagnoses</u>

The second step of the five-step process requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1020(c). The Fifth Circuit Court of Appeals has held that "[a]n impairment can be considered as not severe only if it is a slight abnormality [which has] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education[,] or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The Fifth Circuit later held that while the ALJ needs to follow this "slight abnormality" standard, the ALJ need not use "magic words"; instead, remand is necessary only where there is "no indication that the ALJ applied the correct standard." *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986).

Here, Drs. Brown, Rudolph, and Lankford diagnosed Velasquez with panic disorder. (Tr. 786, 792, 1037). While the ALJ undertook a detailed credibility analysis as to Velasquez's knee and back pain, the ALJ's analysis as to Velasquez's alleged mental impairments was less in-depth. The ALJ noted Dr. Brown's diagnosis of panic disorder and Dr. Brown's opinion that Velasquez has marked limitations in her ability to interact with supervisors and coworkers, but then summarily concluded that Velasquez is merely moderately so limited. (Tr. 22). The ALJ did

not state a conclusion on Dr. Brown's panic disorder diagnosis (or the diagnoses of the other doctors), nor state whether Velasquez's panic disorder is a slight abnormality having such minimal effect on Velasquez that it would not be expected to interfere with her work. *See Stone*, 752 F.3d at 1101. Nor is this a case where the ALJ applied the correct standard in function but not form. *See Hampton*, 785 F.2d at 1311. Because there is no indication that the ALJ applied the correct standard, remand is necessary. *See Hampton*, 785 F.2d at 1311.

2. Dr. Wray

Furthermore, "an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000); *see also Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988) ("an ALJ's unfavorable credibility evaluation of a claimant's complaints of pain will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and assigns articulated reasons for discrediting the claimant's subjective complaints of pain.").

The ALJ did not so much as mention the views of treating physician Dr. Wray on Velasquez's anxiety, or Dr. Wray's prescriptions of the various anxiety medications on the record. The ALJ instead undertook a misplaced credibility analysis, writing, "Given that I did not find the claimant credible concerning the foregoing allegations, why should I believe her allegations concerning panic attacks? Allegations of mental impairments obviously rely in great part upon a person's credibility." (Tr. 26). The foregoing allegations to which the ALJ alluded were Velasquez's allegations of neck and back pain, which medical professionals repeatedly

reported did not match the medical findings, *i.e.*, Velasquez was embellishing. *(See, e.g.,* Tr. 668-90, 801-08). However, there is no record of medical professionals reporting that Velasquez was embellishing panic disorder or anxiety. To the extent the ALJ did not believe Velasquez's subjective complaints of panic disorder and anxiety, absent controverting medical evidence, *Abshire* required the ALJ to "weigh[] the objective medical evidence and assign[] articulated reasons for discrediting the claimant's subjective complaints of pain," as to panic disorder and anxiety specifically. *Abshire*, 848 F.2d at 642. What the ALJ in fact discredited was not Velasquez's subjective complaints, but the diagnoses and treatment records of four medical professionals without explanation. By failing to give Dr. Wray's opinions and treatment records proper attention under *Newton* and *Abshire*, the ALJ erred. See *Newton*, 209 F.3d at 453; *Abshire*, 848 F.2d at 642.

## CONCLUSION

Accordingly, the decision of the Commissioner is VACATED in part and the case is REMANDED for further consideration in light of the foregoing. Any appeal shall be to the Court of Appeals for the Fifth Circuit in accordance with 28 U.S.C. § 636(c)(3).

**SO ORDERED.**

Dated this 16th day of September, 2014.

_____
E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**